IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSUE RIVERA,

    Plaintiff,

    v.

ATLASS INSURANCE GROUP OF FLORIDA, INC., et al.,

    Defendants.

CIVIL NO. 09-1434 (RLA)

**ORDER DENYING MOTIONS TO DISMISS**
**FOR LACK OF ADMIRALTY JURISDICTION**

Plaintiff instituted these proceedings against VICTOR CURET ("CURET"), GUARANTY INSURANCE AGENCY, CORP. ("GUARANTY") and ATLASS INSURANCE GROUP, INC. ("ATLASS") claiming that they failed in their duty as brokers to procure adequate insurance for his vessel "Amanecer" which sank on January 1, 2007.

Codefendants CURET and GUARANTY have moved the court to dismiss the instant complaint pursuant to the provisions of Rule 12(b)(1) Fed. R. Civ. P. alleging that we lack jurisdiction over plaintiff's claims against them.

The court having reviewed the arguments presented by the parties in light of the applicable legal precedent finds that it does have authority to entertain the claims before us under admiralty jurisdiction.

## Standard of Review

The court's authority to entertain a particular controversy is commonly referred to as subject matter jurisdiction. "In the absence of jurisdiction, a court is powerless to act." Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004). "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." Amoche v. Guarantee Trust Life Ins. Co. 556 F.3d 41, 48 (1st Cir. 2009). "[L]itigants cannot confer subject-matter jurisdiction, otherwise lacking". Whitfield v. Municipality of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009).

Federal courts are courts of limited jurisdiction and hence, have the duty to examine their own authority to preside over the cases assigned. Further, as it involves a court's power to hear a case, it may be raised at any time. Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). "The objection that a federal court lacks subject-matter jurisdiction... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). [F]ederal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary. Whitfield, 564 F.3d at 44. "It is black-letter law that a federal

**CIVIL NO. 09-1434 RLA)** **Page 3**

court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). *See also*, Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001) ("Federal courts, being courts of limited jurisdiction, have an affirmative obligation to examine jurisdictional concerns on their own initiative.")

The proper vehicle for challenging the court's subject matter jurisdiction is Rule 12(b)(1).

> There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges. Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in plaintiff's complaint are taken as true for purposes of the motion. However, when a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) involves factual questions, the court engages in a two-part inquiry.
>
> First, the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action... Second, if the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim, the trial court may proceed as it never would under

**CIVIL NO. 09-1434 RLA)** **Page 4**

    12(b)(6) for Federal Rule of Civil Procedure 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

Torres-Negron v. J&N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007) (internal citations, quotation marks and brackets omitted). *See also*, Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

    In this particular case the relevant facts necessary for our limited inquiry are straightforward and uncontested.

### THE FACTS

    Plaintiff, JOSUE RIVERA, is a resident of Puerto Rico.

    Codefendant CURET is an insurance broker and resident of Puerto Rico.

    Codefendant GUARANTY is an insurance agency with its principal offices in Puerto Rico.

    Codefendant ATLASS is an insurance broker with its principal place of business in the state of Florida.

    GREAT LAKES REINSURANCE (UK) PLC, an insurer, denied coverage for the vessel's accident under various policy provisions.

**CIVIL NO. 09-1434 RLA)** **Page 5**

GREAT LAKES filed a declaratory judgment action against plaintiff in this forum, Civ. No. 07-1318(ADC), which concluded by a settlement between the parties on June 26, 2009.

## ADMIRALTY JURISDICTION

### Generally

Jurisdiction regarding the claims asserted against CURET and GUARANTY[1] will depend on whether a broker's agreement to procure maritime insurance for a private vessel falls within our admiralty jurisdiction.[2] Pursuant to 28 U.S.C. § 1333(1), district courts are vested with original jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction."

"The boundaries of admiralty jurisdiction over contracts - as opposed to torts or crimes - being conceptual rather than spatial, have always been difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). "The principle by reference to which the cases are supposed to fall on one side of the line or the other is an exceedingly broad one. The only question is whether the transaction relates to ships and vessels, masters and mariners, as agents of commerce." Kossick, 365 U.S. at 736 (citation and quotation marks omitted).

---

[1] There is diversity jurisdiction with respect to ATLASS, the additional defendant, who is not a party to the instant petitions to dismiss.

[2] No diversity of citizenship exists between plaintiff and movants nor are there any other grounds for federal jurisdiction to attach regarding the claims asserted against them in the complaint.

**CIVIL NO. 09-1434 RLA)** **Page 6**

"The Supreme Court has reiterated that the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce. Therefore, in determining whether a contract falls within maritime jurisdiction, we focus our inquiry on whether the nature of the transaction was maritime, that is, whether the contract relates to the navigation, business or commerce of the sea." Puerto Rico Ports Auth. v. Umpierre-Solares, 456 F.3d 220, 224 (1st Cir. 2006) (citations and internal quotation marks omitted).

"To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as would in a putative maritime tort case... Nor can we simply look to the place of the contract's formation or performance. Instead, the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23-24, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (internal citations and quotation marks omitted).

"Congress has granted district courts the power to entertain any civil case of admiralty or maritime jurisdiction. 28 U.S.C. § 1331(1). That jurisdictional power encompasses all contracts which relate to the navigation, business, or commerce of the sea. In determining whether admiralty jurisdiction exists with regard to a contract claim, a court must refer to the nature and subject of the contract. When a contract relates to ships in their use as ships or

**CIVIL NO. 09-1434 RLA)** **Page 7**

to commerce or transportation in navigable waters, there is admiralty jurisdiction." Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n, 239 F.Supp.2d 316, 319 (E.D.N.Y. 2003).

Following the Kirby precedent, "our inquiry into whether a contractual dispute falls within our maritime jurisdiction must focus on whether the contract's '*primary objective*' has an 'essentially maritime nature' and relates to 'maritime commerce.'" New Hampshire Ins. Co. v. Home Sav. and Loan Co., 581 F.3d 420, 424 (6th Cir. 2009). (citation omitted, italics in original).

"[U]nlike tort doctrine the availability of admiralty jurisdiction over a contract dispute derives not from the circumstances surrounding an alleged breach and attendant injury, but instead from whether the relevant contractual relationship embodied in the parties' agreement incorporates a uniquely maritime concern." Am. Home Assurance Co. v. Merck & Co., Inc., 329 F.Supp.2d 436, 442 (S.D.N.Y. 2004) (internal citations and quotation marks omitted). "As the Court explained in *Kirby*, *Kossick* stands for the proposition that a dispute involving a 'fringe benefit' of maritime contract nevertheless falls within the purview of federal admiralty jurisdiction so long as that promise, although itself attenuated from the business of maritime commerce, was in furtherance of a peculiarly maritime concern." New Hampshire Ins. Co., 581 F.3d at 426 (citation and internal quotation marks omitted).

**CIVIL NO. 09-1434 RLA)** **Page 8**

The Supreme Court has expanded the reach of maritime coverage beyond the limited traditional concepts. *See i.e.*, Norfolk, where it held that bills that included transportation both by land and sea were maritime contracts. It reasoned that "their primary objective [was] to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States. Ideally, the admiralty jurisdiction over contracts ought to include those and only those things principally connected with maritime transportation. To be sure, the two bills call for some performance on land; the final leg of the machinery's journey to Huntsville was by rail. But under a conceptual rather than a spatial approach, this fact does not alter the essentially maritime nature of the contracts." *Id.*, 543 U.S. at 24 (citation, internal quotation marks and brackets omitted).

Additionally, in Kossick, the court found that the shipowner's duty to provide maintenance and cure extended to its agreement to assume responsibility for the consequences of improper or inadequate medical treatment received by a seaman at public facilities. The court concluded that "the alleged contract related to and stood in place of a duty created by and known only in admiralty as a kind of fringe benefit to the maritime contract of hire." *Id.*, 365 U.S. at 736. "So viewed, we think that the alleged agreement was sufficiently related to peculiarly maritime concerns as not to put it, without more, beyond the pale of admiralty law." Kossick, 365 U.S. at 738.

**CIVIL NO. 09-1434 RLA)** **Page 9**

### Agency contracts

For over one and a half century, based on the precedent established in Minturn v. Maynard, 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854), the courts declined to find agency contracts to be within admiralty jurisdiction. In Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991), the Supreme Court overturned Minturn and ruled that agency contracts are not *per se* excluded under § 1333(1). Rather, the Supreme Court directed the courts to examine the characteristics of the agency contract at issue to ascertain whether the services to be performed thereunder qualified as maritime.

In justifying its departure from prior precedent, the court explained that "the trend in modern admiralty case law, by contrast, is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." Exxon, 500 U.S. at 611. "[L]ower courts should look to the subject matter of the agency contract and determine whether the services performed under the contract are maritime in nature." *Id*. at 612.

Most courts which have examined this issue subsequent to Exxon have held that suits based on the breach of agreements to procure a policy of marine insurance are deemed within the court's admiralty jurisdiction.[3] In reaching their decisions, the courts have

---

[3] We do not give weight to the contrary ruling in Sealink, Inc. V. Frenkel & Co., Inc., 441 F.Supp.2d 374, 385-86 (D.P.R. 2006). In that case, the court's determination was conclusory without any

**CIVIL NO. 09-1434 RLA)**                                              Page 10

specifically relied on the importance of maritime insurance for the protection of maritime commerce.

"The weight of authority is that an agreement to procure marine insurance is within the Courts' admiralty jurisdiction... Given the historically recognized uniqueness and importance of marine insurance and maritime risks, it cannot be said that the provision of marine insurance is identical or essentially similar to the provision of non-maritime insurance.... Nor can it be said that the provision of marine insurance is not necessary to the operation, navigation, or management of a ship." Dao v. Knightsbridge Int'l Reinsurance Corp., 15 F.Supp.2d 567, 575 (D.N.J. 1998).

While taking into consideration the protection of maritime commerce the court in Illinois Constructors Corp. v. Morency & Assoc., 794 F.Supp. 841, 843 (N.D.Ill. 1992) further noted that "a vessel owner's use of brokers for the procurement of such insurance is not only customary but is nearly indispensable for the insured owner's benefit." *See also*, Fernandez v. Haynie, 120 F.Supp.2d 575, 585 (E.D.Va. 2000) (broker services were "of vital importance in today's maritime community to the success of plaintiff's vessel and business as a going concern.")

---

particularized discussion of the legal standard and its application to the facts. We also note that contrary to the situation before us, there was diversity of citizenship between the parties.

In Pacific Growth S.A. v. AON Corp., 1999 WL 787659 (S.D.N.Y.) the court further described the significance of the underlying brokerage agreement to maritime interests as follows:

> [I]t appears that the subject matter of the agreement in this case was a marine insurance policy, and the subject matter of that marine insurance policy was... [the] fleet of vessels. The object of the parties' agreement was the procurement and maintenance of marine insurance coverage for [the] fleet. In other words, it was defendants' responsibility to make sure that [the] fleet was insured, premiums were paid, and material changes reported to the insurers. The result of defendants' alleged breach of the insurance brokerage agreement was loss of coverage and uncompensated damage to one of those vessels. The agreement between the parties cannot be divorced from the fleet itself; though its subject matter may technically have been the marine insurance policy, the insurance brokerage agreement would not have existed without the fleet, and the sole motivation for performance of duties under the agreement was the interest of protecting the fleet. Therefore, the insurance brokerage agreement is properly within the Court's admiralty jurisdiction.

Additionally, in Illinois Constructors Corp., 794 F.Supp. at 843, a suit filed against an insurance broker for failure to obtain

adequate pollution coverage the court further described the connection between the agreement with the broker and maritime commerce as follows:

> The obligation to secure insurance which contains pollution coverage of a vessel is integral to the maritime activities of the vessel. The importance of insurance for maritime operations is evidence in view of the devastation to maritime commerce that accidents at sea engender and the protection insurance may afford shipowners from the overwhelming costs of clean-up.

See also, Romen, Inc. v. Price-Forbes, LTD., 824 F.Supp. 206, 208 (S.D.Fla. 1992) ("the insurance brokers' services impacted such maritime matters as the identity of the vessel's purchaser and voluntary limitations on its insurance coverage. Hence, the Court finds that the insurance brokers' services were maritime in nature.")

### Pleasure Boats

As previously noted, to come within admiralty jurisdiction the nature and subject matter of the brokerage contract at issue must be maritime and the exercise of jurisdiction must be consistent with purpose of admiralty jurisdiction, i.e., the protection of maritime commerce. In other words, the nature and subject matter of the contract are the controlling factors in determining when a contract for services anteceding a maritime insurance policy falls within admiralty jurisdiction. In this case it is crucial to bear in mind

that defendants are not parties to the maritime insurance contract but rather, they were agents responsible for procuring a policy that was maritime in nature.

Defendants posit that the ample precedent regarding insurance brokers' agreements as maritime is inapposite to the situation presently before us because the vessel at issue in this litigation was a pleasure boat not connected to a commercial enterprise. However, as the Supreme Court has indicated, there is no legal distinction between these two categories of crafts for purposes of the maritime interests at stake. It has specifically rejected the distinction between "pleasure" boats and "commercial" boats in admiralty jurisdiction.

> Although the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce, petitioners take too narrow a view of the federal interest sought to be protected. The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce.

**CIVIL NO. 09-1434 RLA)** **Page 14**

Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674-75, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (italics in original).

"In maritime law, vessels include crafts capable of use on oceans, rivers, seas, and navigable waters. Since pleasure boats constitute an important part of maritime commerce, admiralty jurisdiction extends to pleasure craft." Acadia Ins. Co. v. McNeill, 116 F.3d 599, 602 n.2 (1st Cir. 1997) (citations and internal quotation marks omitted).

Similarly, insurance coverage for this type of boats represents an important maritime concern.

> There are few objects - perhaps none - more essentially related to maritime commerce than vessels. They have no utility on land; they are taken ashore solely to make or keep them fit for use in the water, or to transport them from one body of water to another. Furthermore, taking smaller boats ashore for these purposes is important or essential to their use on the water. The risk of theft of boats is an important concern of maritime commerce. And whether the theft of a vessel occurs while it is afloat or ashore, the impact of the theft is on maritime commerce. Policies providing insurance covering such theft relate importantly to the protection of maritime commerce.

Sirius Ins. Co. (UK) Ltd. v. Collins, 16 F.3d 34, 36-37 (2nd Cir. 1994).

**CIVIL NO. 09-1434 RLA)**                                                                 **Page 15**

## CONCLUSION

Based on the foregoing, we find that the claims asserted against codefendants CURET and GUARANTY for their alleged failure as brokers to procure adequate insurance coverage for the "Amanecer" fits squarely within the court's admiralty jurisdiction.[4]

Accordingly, the Motion to Dismiss filed by Curet (docket No. **8**)[5] and Defendant Guaranty Insurance Motion to Dismiss (docket No. **10**)[6] are **DENIED.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 13th day of January, 2010.

>                    S/Raymond L. Acosta
>                    RAYMOND L. ACOSTA
>                    United States District Judge

---

[4] We need not address defendants' arguments relying on the preliminary contract doctrine as we find that our final determination in this case would be the same. *See, i.e.*, Robert J. Guendel and Angelique M. Crain, *The Maritime Contract and Admiralty Jurisdiction: Recent Developments Help Clarify an Inherently Confused Landscape*, 77 TLNLR 1235, 1249 (June 2003) ("[A]s they have struggled in the post-Exxon era, courts seem to be coalescing around adoption of a nature and subject matter test regardless of whether the contract is viewed as 'agency' or 'preliminary services'"). *See also*, Robert Force, *The Aftermath of Norfolk Southern Railway v. James N. Kirby, Pty Ltd: Jurisdiction and Choice-of-Law Issues*, 83 TLNLR 1393 (June 2009); Anthony Michael Sabino, *Admiralty Jurisdiction over General Agency Contracts: The Final Voyages of Minturn and the Modern Doctrine of Exxon v. Central Gulf*, 4 USFMLJ 41 (Summer 1992).

[5] See Memorandum of Law (docket No. **9**); Opposition (docket No. **13**) and Reply (docket No. **19**).

[6] See Opposition (docket No. **13**) and Reply (docket No. **18**). Defendant's arguments regarding plaintiff's failure to comply with the provisions of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions are misplaced. This is not an *in rem* proceeding.