IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSUE RIVERA,

    Plaintiff,

    v.

ATLASS INSURANCE GROUP OF
FLORIDA, INC., et al.,

    Defendants.

CIVIL NO. 09-1434 (RLA)

**ORDER DISMISSING CLAIMS AGAINST
ATLASS INSURANCE GROUP OF FLORIDA, INC.
FOR LACK OF IN PERSONAM JURISDICTION**

    Plaintiff instituted these proceedings against VICTOR CURET ("CURET"), GUARANTY INSURANCE AGENCY, CORP. ("GUARANTY") and ATLASS INSURANCE GROUP, INC. ("ATLASS")[1] claiming that defendants failed in their duty as brokers to procure adequate insurance for his vessel "Amanecer" which boat sank on January 1, 2007. Specifically, plaintiff alleges that defendants are liable for tortious breach of their insurance broker's duties and breach of the contract to procure marine insurance.

    Present before us for disposition is the petition for dismissal filed by codefendant ATLASS alleging we lack personal jurisdiction over it.

---

[1] Movant ATLASS has appeared indicating that there is no such entity as the named defendant but rather that the correct corporate name is ATLASS SPECIAL RISKS, INC. Inasmuch as we are dismissing the claims asserted against ATLASS, we need not go into that matter.

## FACTUAL BACKGROUND

According to the complaint, plaintiff requested insurance coverage for his vessel from CURET, his local insurance agent, which request went through GUARANTY, a local insurance broker, which in turn sought assistance from ATLASS, an excess lines insurance broker located in Fort Lauderdale, Florida. ATLASS was able to obtain coverage initially from ING GROEP NV ("ING") and subsequently from GREAT LAKES REINSURANCE (UK) PLC ("GREAT LAKES").[2] The policies were renewed thereafter on a yearly basis following the same modus operandi.

Coverage by ING was effective from June 13, 2003 through 2004. In June 2004, the insurer was changed to GREAT LAKES. Coverage from June 13, 2006 was effected pursuant to a new policy form which included a warranty that the vessel would only be operated by covered persons. The policy's seaworthiness warranty was also changed. Plaintiff alleges that these significant changes in coverage were not pointed out by any of the defendants.

---

[2] For easier reference, we outline the relationship between the relevant players to the events at issue together with their respective geographical locations:

```
              Plaintiff (PR)
                  /
           CURET (PR)
                  /
           GUARANTY (PR)
                  /
           ATLASS (FL)
                  /
           GREAT LAKES (UK)
```

CIVIL NO. 09-1434 (RLA)                                              **Page 3**

---

On January 1, 2007, plaintiff hired a captain to pilot the "Amanecer" from Fajardo, Puerto Rico to Salinas, Puerto Rico. At approximately 6:15 p.m. the vessel departed Fajardo. During its voyage, the vessel encountered engine trouble, took on water and ultimately sank in deep water approximately 10 miles east of Humacao, Puerto Rico.

Plaintiff submitted a claim to GREAT LAKES for the loss of his vessel which the insurer denied for two reasons. First, because plaintiff had allegedly breached the warranty that only covered persons would operate the vessel and second, because plaintiff had purportedly breached the express warranty of seaworthiness.

GREAT LAKES filed a declaratory judgment action against plaintiff in this forum, Civ. No. 07-1318(ADC), which proceedings concluded by a settlement between the parties on June 26, 2009.

### PLAINTIFF'S CLAIMS

Plaintiff contends that ATLASS, as well as the other named defendants, were acting as his insurance brokers and therefore, had a duty to advise him of the substantive coverage changes upon the policy's renewal as of June 2006. According to the complaint, the failure to notify plaintiff of the policy changes upon renewal was a breach of defendants' responsibilities as brokers as well as a breach of the contract to procure marine insurance.

CIVIL NO. 09-1434 (RLA)                                          **Page 4**

---

### IN PERSONAM JURISDICTION

Generally, jurisdiction refers to the power of the courts to hear a dispute and render a judgment which legally binds the parties. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002); United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 617 (1st Cir. 2001). "In its simplest formulation, in personam jurisdiction relates to the power of a court over a defendant." Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994). "To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." Astro-Med, Inc. v. Nihon Kohden America, Inc., Nos. 08-3334, 08-3335, 2009 WL 3384786, at *3 (1st Cir. Oct. 22, 2009) (citation and internal quotation marks omitted). In order for a person to be subject to judicial jurisdiction, such person must have the adequate territorial connection with the state and certain procedural steps must be taken. Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The fact that service of process is properly made does not mean that a court may exercise jurisdiction over a defendant in the absence of the required contacts with the state. 16 James Wm. Moore et al., Moore's Federal Practice, ¶ 108.01[2][c] (3rd ed. 1999).

If jurisdiction over a defendant is lacking, a court may not hear the dispute and any judgment entered will be invalid. Burnham v. Superior Court of Cal., 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631

(1990). *See also*, <u>Farm Credit Bank of Baltimore v. Ferrera-Goitia</u>, 316 F.3d 62, 67 (1st Cir. 2003) (judgment void if court lacking jurisdiction over defendant's person); <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d at 617 ("court must have personal jurisdiction over the parties to hear a case").

Once challenged, plaintiff bears the burden of proving the necessary facts to establish this court's personal jurisdiction over the defendant. <u>Negron-Torres v. Verizon Commc'ns Inc.</u>, 478 F.3d 19, 23 (1st Cir. 2007); <u>Andresen v. Diorio</u>, 349 F.3d 8, 12 (1st Cir. 2003); <u>Jet Wine & Spirits, Inc. v. Bacardi & Co.</u>, 298 F.3d 1, 7 (1st Cir. 2002); <u>Daynard</u>, 290 F.3d at 50. "On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." <u>Astro-Med, Inc.</u>, 2009 WL 3384786, at *3.

Absent an evidentiary hearing, the court may determine in personam jurisdiction based on a prima facie review of the properly documented jurisdictional facts as presented by plaintiffs. <u>Astro-Med, Inc.</u>, 2009 WL 3384786, at *3; <u>Jet Wine & Spirits, Inc.</u>, 298 F.3d at 7. Under the prima facie standard, a "plaintiff must make a showing as to every fact required to satisfy 'both the forum's long-arm statute and the due-process clause of the Constitution.'" <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992) (citing <u>U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.</u>, 894 F.2d 9, 11 (1st Cir. 1990)). "'The plaintiff must go beyond the pleadings and make affirmative

proof'". <u>Boit</u>, 967 F.2d at 675 (citing <u>Chlebda v. H. E. Fortna & Bro.</u> <u>Inc.</u>, 609 F.2d 1022, 1024 (1st Cir. 1979)). A prima facie showing "must be based on evidence of specific facts set forth in the record." <u>Boit</u>, 967 F.2d at 675.

In describing the applicable guidelines for disposing of motions to dismiss for want of personal jurisdiction, the court in <u>Barrett v. Lombardi</u>, 239 F.3d 23, 26-27 (1st Cir. 2001) noted:

> The most conventional of these methods - and the one that applies here - authorizes the district court to restrict its inquiry to whether the plaintiff has proffered evidence which, if credited, suffices to support a finding of personal jurisdiction. To make this prima facie showing, the plaintiff cannot rest upon mere averments, but must adduce competent evidence of specific facts. When he does so, the court must accept the proffer at face value. Determining the adequacy of this prima facie jurisdictional showing is a quintessentially legal determination....

"[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d at 619 (citing <u>United States Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993)). *See also,* <u>Daynard</u>, 290 F.3d at 51 (court need not

resolve disputed facts but rather accepts plaintiff's proffer in ascertaining adequacy of *prima facie* showing).

The court "ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." Rodríguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997). *See also*, Boit, 967 F.2d at 675. Facts proffered by a defendant may also be considered provided these are uncontradicted. Mass. Sch. of Law v. Amer. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). However, in evaluating the plaintiff's showing, courts "do not credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). "We take the facts alleged and produced by [plaintiff] in the light most favorable to his jurisdictional assertion." Daynard, 290 F.3d at 57.

When, as here, federal question is the basis of jurisdiction and there is "insufficient statutory authorization for extraterritorial service," the Court's power to assert personal jurisdiction over a nonresident defendant is governed by the forum state's long arm statute. United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992).

Our local long arm provision allows for the exercise of personal jurisdiction over nonresident defendants, *inter alios*, in situations

**CIVIL NO. 09-1434 (RLA)**                                        **Page 8**

---

when the litigation arises out of transactions conducted in Puerto Rico.[3]

    In order to meet his burden, plaintiff must establish that the local long-arm statute allows for jurisdiction over the defendant and that such exercise of jurisdiction comports with the due process requirements. In examining the Puerto Rico provision, the Court of Appeals has noted that it authorizes maximum constitutional reach. "We have concluded before, and today reaffirm, that this statute extends personal jurisdiction as far as the Federal Constitution permits." Pritzker, 42 F.3d at 60. "Puerto Rico's long-arm statute stretches up to the point allowed by the Constitution [t]herefore, we proceed directly to the constitutional inquiry." Negron-Torres, 478 F.3d at 24 (citations and internal quotation marks omitted). *See also*, Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (citations and internal quotation marks omitted) ("We proceed directly to the constitutional analysis, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.")

---

    [3] Rule 4.7(a)(1) provides in its relevant part that "[w]henever the person to be served is not domiciled in Puerto Rico, the general court of justice shall take jurisdiction over said person if the action or claim arises because said person: (1) Transacted business in Puerto Rico personally or through an agent..." 32 P.R. Laws Ann., App. III (1983).

The Due Process Clause of the Fourteenth Amendment limits the power of a forum to assert personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). Accordingly, when allowed to by the local long arm statute, the "exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution." Davila-Fermin v. Southeast Bank, N.A., 738 F.Supp. 45, 47 (D.P.R. 1990). See also, Matosantos Commercial Co. v. Applebee's Int'l, Inc., 2 F.Supp.2d 191, 195 (D.P.R. 1998); Rafael Margarida & Co. v. Audi of America, Inc., 721 F.Supp. 394, 398 (D.P.R. 1989). Due Process is satisfied when personal jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts" with the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Helicopteros Nacionales, 466 U.S. at 413-414, 104 S.Ct. at 1872, 80 L.Ed.2d at 411; Int'l Shoe Co. v. State of Wash., Office of..., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95; N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005).

"Due process requires the plaintiff to prove the existence of either general or specific jurisdiction. The critical factor in the personal jurisdiction calculus - both general and specific - is the existence of 'minimum contacts' between the nonresident defendant and the forum." Negron-Torres, 478 F.3d at 24. "The Due Process Clause

requires that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Phillips, 530 F.3d at 27 (citation and internal quotation marks omitted).

As part of the personal jurisdiction inquiry, plaintiff must establish that exercising jurisdiction over non-residents under those circumstances would prove reasonable in order to comport with the due process minimum contacts requirements. United States v. Swiss Am. Bank, Ltd., 274 F.3d at 619; Pritzker, 42 F.3d at 61, *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995).

### General and Specific Jurisdiction

The court may exercise its power over a non-resident defendant by way of either general or specific jurisdiction. N. Laminate Sales, 403 F.3d at 14; United States v. Swiss Am. Bank, Ltd., 274 F.3d at 619-20.

When a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contact with the forum, such state is exercising "general jurisdiction" over the defendant. Helicopteros Nacionales, 466 U.S. at 415, n.9, 104 S.Ct. at 1872, 80 L.Ed.2d at 411; Terzano v. PFC, 986 F.Supp. 706, 710 (D.P.R. 1997). General jurisdiction exists when the defendant's contacts with the forum are continuous, systematic, and substantial.

Phillips, 530 F.3d at 26; N. Laminate Sales, 403 F.3d at 14; United States v. Swiss Am. Bank, Ltd., 274 F.3d at 619.

"General personal jurisdiction, as its name implies, is broad in its ambit: it is the power of a forum-based court, whether state or federal, over a defendant which may be asserted in connection with suits not directly founded on that defendant's forum-based conduct. Put another way, general jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity unrelated to the suit, in the forum state." Pritzker, 42 F.3d at 59-60 (internal citations, quotation marks and brackets omitted).

On the other hand, when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising "specific jurisdiction" over a defendant. Helicopteros Nacionales, 466 U.S. at 414 n.8, 104 S.Ct. at 1872, 80 L.Ed.2d at 411. Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 541 (1985).

CIVIL NO. 09-1434 (RLA)                                        Page 12

---

### Relatedness, Purposeful Availment and Reasonableness

"For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness." Phillips, 530 F.3d at 27; Negron-Torres, 478 F.3d at 25. "[A]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Negron-Torres, 478 F.3d at 24 (citation and internal quotation marks omitted).

"To satisfy the relatedness requirement, 'the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.'" N. Laminate Sales, 403 F.3d at 25 (citing United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). See also, Jet Wine & Spirits, 298 F.3d at 10-12. "The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts. There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important or at least material element of proof in the plaintiff's case." Phillips, 530 F.3d at 27 (citations, internal quotation marks and brackets omitted).

"Forum-state contacts do not have to include actual physical presence in order for them to be constitutionally significant... The sending of information into the forum state via telephone or mail

constitutes evidence of a jurisdictional contact, directed into the forum." Rodriguez v. Dixie S. Indus., Inc., 113 F.Supp.2d 242, 251 (D.P.R. 2000).

"In a contract claim... the court should analyze the elements of the cause of action and determine 'whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach.'" Rodriguez, 113 F.Supp.2d at 251 (citing Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)).

"To satisfy the [purposeful availment] requirement, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. The focus in this second requirement is on voluntariness and foreseeability." N. Laminate Sales, 403 F.3d at 25 (citations and internal quotation marks omitted).

Contacts are sufficient for the exertion of personal jurisdiction when they are the result of a purposeful act by defendant. The Supreme Court has made it very clear that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential

in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, 1298 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). Importantly, "random, isolated, or fortuitous" contacts with the forum are not enough. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). "Whether defendant's contact with the forum is described as an 'affirmative act' or 'purposeful availment,' the inherent foreseeability of consequences is one of the keystones of personal jurisdiction." Escude Cruz v. Ortho Pharm., Corp., 619 F.2d 902, 904 (1st Cir. 1980). Foreseeability requires that a defendant's contacts with the forum be such that said party "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 501 (1980).

"So long as it creates a substantial connection with the forum, even a single act can support jurisdiction." Daynard, 290 F.3d at 62 (citation, quotation marks and brackets omitted). "[I]n order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as the contact is meaningful." Pritzker, 42 F.3d at 61.

"These opinions demonstrate that the jurisprudence of minimum contacts casts a wide net, and a non-resident defendant may not

always be able to elude the net by such simple expedients as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction. Rather, courts must look beyond these formalistic measures and evaluate the nature of the contacts and, relatedly, the degree to which they represent a purposeful availment of the forum's protections and benefits." Pritzker, 42 F.3d at 62.

Lastly, "the third requirement is that the exercise of jurisdiction must be reasonable and to guide us in the evaluation of reasonableness, the Supreme Court has provided a set of gestalt factors to consider." N. Laminate Sales, 403 F.3d at 26 (citations and internal quotation marks omitted); United States v. Swiss Am. Bank, Ltd., 274 F.3d at 619; Jet Wine & Spirits, 298 F.3d at 11. "The Gestalt factors measure reasonableness: even if such requisite contacts exist, the court's exercise of jurisdiction must comport with fair play and substantial justice." Phillips, 530 F.3d at 29 (internal citations, quotation marks and brackets omitted).

The following factors are considered in the due process analysis: "(1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pritzker, 42 F.3d at 63-64.

However, "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the two prongs (relatedness and purposeful availment), the less the defendant need show in terms of unreasonableness to defeat jurisdiction...." Ticketmaster-New York, 26 F.3d at 210.

### Discussion

In order to rule on the relatedness factor in the particular situation at hand, we must initially examine the evidence on record in light of the causes of action adduced by plaintiff in the complaint. Hence, our inquiry should focus on defendant's ties with this forum and their connection, if any, with plaintiff's claims.

In his response to the request for dismissal, plaintiff summarizes his claims against ATLASS as follows:

Atlass... along with the other defendants, were acting as insurance brokers representing him and thus owed a duty to him to act with reasonable skill and diligence in performing the services of an insurance broker and that (sic) they specifically had a duty to advise [plaintiff] of the substantive changes in the coverage when the policy covering the MV *Amanecer* was renewed as of June 2006. The failure of the defendants to notify the plaintiff of the substantive policy changes upon renewal of the policy was a breach of both their duty to their client, Mr. Rivera, as

**CIVIL NO. 09-1434 (RLA)**                                              **Page 17**

well as a breach of the contract to procure marine insurance.

Plaintiff's Opposition (docket No. 21) p. 7.

Plaintiff points to the following forum contacts between ATLASS and GUARANTY in support of our in personam jurisdiction:

- **6/10/03** ATLASS fax to GUARANTY with insurance quotation.

- **6/26/03** Thirty Day Insurance Binder from ATLASS effective 6/13/03.

- **6/3/04** E-mail from ATLASS to GUARANTY advising that the policy would expire on 6/13/04 and that GREAT LAKES was willing to renew it.

- **6/15/04** Thirty day Insurance Binder from ATLASS effective 6/13/04.

- **6/1/05** E-mail from ATLASS to GUARANTY regarding renewal terms by GREAT LAKES provided pertinent documentation was submitted.

- **6/16/05** Thirty day Insurance Binder from ATLASS effective 6/13/05.

- **6/20/06** Fax from ATLASS to GUARANTY enclosing invoice and binder and documentation to be filled out for processing insurance.

- **6/20/06** Thirty day Insurance Binder from ATLASS effective 6/13/06.

CIVIL NO. 09-1434 (RLA)                                    Page 18

- **7/28/06** Fax from ATLASS to GUARANTY requesting necessary documentation to avoid policy cancellation.

- **8/28/06** Fax from ATLASS to GUARANTY advising that the policy had been cancelled due to failure to provide documentation.

All these communications - which essentially consisted in the transmission of insurance-related information from the two sureties to the local broker - were carried out strictly between ATLASS and GUARANTY - whereupon the pertinent documents were subsequently forwarded by GUARANTY to plaintiff.

In a conclusory fashion plaintiff argues that: "There can be little question that the activities of Atlass in dealing with Guaranty, a Puerto Rico insurance broker, for a policy issued to Josue Rivera, a Puerto Rico resident, are directly related to Rivera's claims concerning those policies. As such, the relatedness test is clearly met." Plaintiff's Opposition (docket No. 21) p. 7, 9-10. We find that the facts point otherwise.

The underlying premise in plaintiff's claims is that ATLASS acted as his insurance broker and thereby failed in its duty to keep him abreast of the coverage changes. However, upon review of the aforementioned events which were cited by plaintiff as purportedly connecting ATLASS to this forum, it is evident that these are not specifically related to the causes of action pleaded in the complaint.

As plaintiff himself concedes, even though the subject matter of the aforementioned contacts involved insurance for property of a Puerto Rico resident, all these communications were directed at GUARANTY, not plaintiff. There is no direct interaction between plaintiff and ATLASS; only communications between GUARANTY and ATLASS. Plaintiff has failed to present any evidence of privity or a contractual relationship with ATLASS.

Further, it is uncontested that GUARANTY was not an ATLASS agent but rather an independent insurance broker with whom ATLASS conducted business. The deposition transcripts of two of ATLASS representatives confirm this relationship.

When asked to describe the relationship between these two entities, MS. DIANA DOLORES NERO responded that "Guaranty Insurance Agency is one of the agents that comes to Atlass Special Risk to place business."[4] GUARANTY placed business with ATLASS simply because ATLASS has access to markets GUARANTY did not.[5] There was no business relationship between ATLASS and CURET[6] nor with plaintiff.[7]

JAMES GALLAUDET testified that "Atlass would broker business for Guaranty... Atlass would broker yacht business for [GUARANTY] to

---

[4]   Docket No. 21-1 Exh. 15, p. 16 line 20.

[5]   *Id.* line 24.

[6]   *Id.* p. 17 line 12.

[7]   *Id.* lines 17 & 23.

place with marine insurance companies or underwriters."[8] The reason for GUARANTY to contact ATLASS "boiled down to being able to help them place boat insurance business."[9]

There was a one-page producer agreement between ATLASS and GUARANTY which "generally states that Guaranty is responsible for providing Atlass accurate information and documentation as required and paying premiums that are earned. It also states that Guaranty has no authority to bind any business or act on behalf of Atlass as their agent. It's strictly a brokerage relationship."[10]

Based on the information before us, it is evident that plaintiff's claims do not arise from any dealings between him and ATLASS. There was no agreement, relationship or interaction from which we may conclude that ATLASS was acting in its capacity as plaintiff's insurance broker.

Further, it is undisputed that ATLASS did not seek business in Puerto Rico. Rather, the underlying business transactions were initiated by GUARANTY's submissions to ATLASS in Florida requesting insurance coverage for plaintiff. Further, ATLASS processed the insurance requests in Florida by procuring coverage initially from ING and subsequently from GREAT LAKES, both foreign insurers.

---

[8]  Docket No. 21-2 Exh. 16 p. 14 line 12.

[9]  *Id.* p. 14 line 22.

[10]  *Id.* p. 15 line 7.

Faced with these facts we find that plaintiff is unable to support his specific jurisdiction argument on the business relationship of its broker, i.e., GUARANTY, with a third party located outside our jurisdiction.

### General Jurisdiction

According to the uncontested evidence submitted by defendant, ATLASS has its principal place of business in Florida. It has no employees in Puerto Rico; never owned or leased property here; never paid local taxes, or maintained any office or records in Puerto Rico. It has never been authorized to do business in Puerto Rico; never, appointed an agent for service of process locally, or negotiated or issued insurance policies in the Island or to Puerto Rico residents. It does not have an insurance licence to do business in Puerto Rico.[11]

It appears that GUARANTY's requests for insurance were forwarded to ATLASS in its Florida offices where they were processed and where the pertinent documentation was issued. Its role was essentially to act as an intermediary between GUARANTY, the local insurance broker and the foreign insurers.

We find that the limited contacts between ATLASS and GUARANTY do not reflect a continuous, systematic and substantial activity with this forum necessary for our long arm reach under general jurisdiction principles. We further find that the information

---

[11] Statement under Penalty of Perjury of FRANK ATLASS (docket No. 20-3).

**CIVIL NO. 09-1434 (RLA)**                                          **Page 22**

available to us does not merit additional inquiry into any other possible activities of ATLASS within this jurisdiction. Accordingly, we decline plaintiff's suggestion of additional discovery in this regard.

### CONCLUSION

Based on the foregoing, the Motion to Dismiss filed by ATLASS (docket No. **20**)[12] is **GRANTED** and the claims asserted against ATLASS are hereby **DISMISSED** for lack of in personam jurisdiction.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 13th day of January, 2010.

                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                    United States District Judge

---

[12] See also, Memorandum in Support (docket No. **21**), Opposition (docket No. **21**) and Reply (docket No. **24**).