IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSUE RIVERA

    Plaintiff,

v.

ATLASS INSURANCE GROUP OF
FLORIDA, INC., *et al.*

    Defendants.

Civil No. 09-1434 (SEC)

**OPINION AND ORDER**

Before the Court are co-defendant Guaranty Insurance Agency Corp.'s ("Guaranty") motion for summary judgement (Docket # 55); plaintiff Josue Rivera's opposition thereto (Docket # 62), and Guaranty's reply (Docket # 65). After reviewing the filings and the applicable law, Guaranty's motion is **DENIED**.

**Background**

This is a case on the admiralty side of the Court brought by Rivera against Guaranty and other insurance brokers. Docket # 1.[1] The Court has summarized Rivera's allegations on prior occasions (see Docket ## 25, 26, and 52), but they are restated here for background purposes.

Rivera requested insurance coverage for his vessel from Victor Curet, his local insurance agent, who contacted Guaranty, a local insurance broker, which in turn sought assistance from Atlass Insurance Group, Inc. ("Atlass"), an excess lines insurance broker located in Fort Lauderdale, Florida. Atlass obtained coverage initially from ING Groep NV ("ING") and subsequently from Great Lakes Reinsurance (UK) PLC ("Great Lakes"). The policies were renewed thereafter on a yearly basis following the same modus operandi.

---

[1] This case was reassigned to the undersigned on February 8, 2010 due to Judge Raymond L. Acosta's retirement. Docket # 28.

2

Coverage by ING was effective from June 13, 2003 through 2004. In June 2004, the insurer changed to Great Lakes. Then, on June 13, 2006, Great Lakes changed certain policy terms, including a warranty that the vessel would only be operated by covered persons as well as a seaworthiness warranty. Rivera alleges that defendants failed to point out these changes.

On January 1, 2007, Rivera hired a captain to navigate his vessel from Fajardo to Salinas, Puerto Rico. During its voyage, the vessel suffered engine trouble, took on water, and ultimately sank in deep water approximately 10 miles east of Humacao, Puerto Rico. Rivera submitted a claim to Great Lakes for the loss of his vessel which the insurer denied for two reasons: first, because Rivera had allegedly breached the warranty that only covered persons would operate the vessel, and second, because Rivera had purportedly breached the express warranty of seaworthiness.

Great Lakes filed a declaratory judgment action against Rivera in this forum, Civ. No. 07-1318(ADC), but those proceedings concluded by a confidential settlement between the parties on June 26, 2009.[2] In the interim Rivera filed this suit. Here, he claims that, as his insurance brokers, Guaranty and the other defendants had a duty to advise him of the substantive policy changes, and that they failed to fulfill this duty.[3] Moreover, Rivera avers that defendants' conduct also breached the contract they have with him to procure marine insurance. These claims are premised on Puerto Rico's contract, tort, and insurance laws.

After several procedural nuances, Guaranty moved for summary judgment on Rivera's tort claims, arguing that (1) Rivera introduced no evidence to show that the vessel sank; (2) there is no causal connection between the vessel's sinking and Guaranty's failure to inform; (3) Rivera received compensation for all his losses when settling the suit by Great Lakes; and

---

[2] The record contains no information about the terms of the settlement.

[3] Among other things, the Puerto Rico Insurance Code requires insurance brokers to "[p]rovide the consumer with a clear and concise orientation about the coverage, benefits, limitations and exclusions of the insurance policy negotiated by him/her . . . ." P.R. Laws Ann. tit. 26, § 949(a).

(4) Guaranty discharged its duties toward Rivera by mailing to him a copy of the insurance policy and an attachment explaining the policy's conditions, covenants, and restrictions. Docket ## 55 and 65. Rivera opposed each of these contentions. Docket # 62.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramirez Rodriguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). "The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Accordingly, "the non-moving party is not required to respond unless and until the moving party has properly supported the motion with sufficient evidence . . . ." Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981) (citing Adickes v. S.H. Kress and Company, 398 U.S. 144, 157-61 (1970). In other words, the movant must put the ball in play for the summary judgment inquiry to begin; otherwise, his motion may be discarded out of hand. See Garside v. Osco Drug, Inc., 859 F.2d 46, 50 (1st Cir. 1990).

**Applicable Law and Analysis**

Although the Court sits in admiralty jurisdiction in this case, Puerto Rico's substantive law applies. See Greenly v. Marine Management Cgroup, Inc., 192 F.3d 22, 26-27 (1st Cir. 1999) (establishing that state-law applies in maritime suits "when no federal rule covers a particular situation."). As stated above, Guaranty has challenged Rivera's claims under Article 1802 of the Puerto Rico Civil Code, which establishes that a "person who by an act

4

or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claimant seeking relief under this article must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Soc. Gananciales v. Padin Co., Inc., 17 P.R. Offic. Trans. 111, 117 P.R. Dec. 94 (1986). At this stage, however, the Court need not delve into an elaborated discussion of Puerto Rico's tort law because Guaranty has failed to identify evidence of record supporting its motion. See Santiago-Ramos, 217 F.3d at 52 ("The moving party bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.").

For instance, Guaranty's motion challenges Rivera's allegations about the damages he suffered, stating that the record lacks evidence showing that the vessel sank. Docket # 55 ¶ 8. Nevertheless, Rivera's factual averments are supported by a sworn statement from the person who was navigating the vessel when it sank. Docket # 57-1, Exh. E. And Guaranty itself has attached this statement as part of the exhibits supporting its summary judgment motion. Docket # 55-1 ¶ 4. Accordingly, Guaranty's contentions on this front are flawed.

Next, Guaranty challenges Rivera's allegations concerning the causal connection between the damages he suffered and Guaranty's alleged omissions. Docket # 55 ¶¶ 9-11. In this regard, Guaranty posits that the mechanical problems that caused the accident had nothing to do "with the failure to inform[] [about] the policy changes in coverage . . . ." Docket # 55 ¶ 10. This argument, however, misses the mark. Rivera's main contention is that he was unable to comply with certain policy terms because Guaranty and the other defendants failed to disclose them to him. In other words, Rivera's claim is not for the loss of the vessel—he is not claiming that Guaranty sank the boat—but for the loss of the proceeds that were due under the policy. Accordingly, Guaranty's position is flawed on this front also.

The same holds true about Guaranty's arguments in connection with the settlement between Great Lakes and Rivera. Docket # 55 ¶ 13. On this point, Guaranty contends that Rivera was fully compensated for the loss of the vessel through the settlement agreement

5

executed with Great Lakes.[4] Guaranty, however, has introduced no evidence to support this contention, which is impossible to assess with the record available at this stage.

Lastly, Guaranty alleges that it discharged its duties toward Rivera by mailing to him a copy of the insurance policy and an attachment explaining the policy's conditions, covenants, and restrictions. Docket # 55 ¶ 12, Docket 65 ¶ 6. To support this contention, Guaranty directs the Court to a letter it allegedly sent to Rivera. Docket # 57-1, Exh. B. The letter, however, only summarizes the general terms of the policy—e.g., coverage and liability limits—and nowhere mentions the clauses that Rivera alleges were changed. Id. Moreover, even though Guaranty argues that the letter included an attachment with the relevant information, it has failed to provide the Court with a copy of the attachment or to direct the Court to a record entry containing it. Accordingly, even assuming that Guaranty could have discharged its duties toward Rivera through written correspondence, the record contains no evidence to validate Guaranty's claim that the correspondence sent reflected the clauses underlying this suit.[5] For these reasons, Guaranty's arguments fail once more.

**Conclusion**

Based on the foregoing, Guaranty's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of August, 2011.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[4] Guaranty also relies on Fed. R. Civ. P. 19 to argue that *this* case should be dismissed because it was not joined as a party to Great Lakes' litigation with Rivera. Docket # 55 ¶¶13 and 14. Nevertheless, Guaranty cites no authority for such an application of Rule 19, and the Court is aware of none.

[5] The plain language of § 949(a) appears to require much more than the insurance broker's written communication. The parties, however, have not placed the Court in a position to make this determination.